**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF RHODE ISLAND**

---

In re:   Richard F. Carpenter,                                                      BK No: 16-10150
         Debtor                                                                     Chapter 7

---

### DECISION AND ORDER ON DEBTOR'S MOTION
### TO AVOID JUDICIAL LIEN AND CREDITOR'S OBJECTION
### TO LIEN AVOIDANCE AND HOMESTEAD EXEMPTION

This contested matter is one of first impression in this district as it involves application of the Rhode Island homestead exemption under R.I. Gen. Laws § 9-26-4.1 ("Homestead Exemption") to the mixed-use residential/commercial property of the debtor Richard F. Carpenter located at 298 Montgomery Avenue, Cranston, Rhode Island ("Property"). Mr. Carpenter filed a motion to avoid the judicial lien held by Citizens Bank, N.A. ("Citizens Bank")[1] (Doc. #16, "Motion") against the Property under 11 U.S.C. § 522(f)(1)(A),[2] Federal Rule of Bankruptcy Procedure 4003, and Rhode Island Local Bankruptcy Rule 4003-2. He asserts that the lien impairs his claimed Homestead Exemption. Citizens Bank objects to the lien avoidance (Doc. #19, "Objection"), arguing that the Property does not qualify for the Homestead Exemption because its commercial use predominates over its residential use and, even if it applied, Mr. Carpenter's violations of Cranston's zoning ordinances by residing in portions of the Property not authorized for residential use precludes its application. Mr. Carpenter counters that the Homestead Exemption extends to the entirety of the Property because it is, and has been for many years, his sole residence and its predominant use is residential.

---

[1] On April 16, 2014, RBS Citizens, N.A. changed its name to Citizens Bank, N.A. as evidenced by a copy of the Certification of National Bank Title Change attached as Exhibit A to its post-trial brief (Doc. #39).

[2] Unless otherwise indicated, the terms "Bankruptcy Code," "Chapter," "section" and "§" refer to Title 11 of the United States Code, 11 U.S.C.§§ 101, *et seq.*, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub L. No. 109-8, 119 Stat. 37 ("BAPCPA"). References to the "Bankruptcy Rules" or "Rules" shall mean the Federal Rules of Bankruptcy Procedure.

The Court held evidentiary hearings on June 20, 2016, and June 30, 2016, and the parties filed post-trial briefs (Doc. #39, "Citizens Bank's Trial Brief," and Doc. #43, "Mr. Carpenter's Trial Brief"). The matter was taken under advisement on October 5, 2016. This decision constitutes the Court's findings of fact and conclusions of law in accordance with Bankruptcy Rules 7052(a), made applicable by Rule 9014(c). After consideration of the testimony and exhibits submitted at the hearing and the parties' arguments, the Court finds that Mr. Carpenter is entitled to the full exemption of $500,000 for the Property under the Homestead Exemption, and Citizens Bank's lien impairs that exemption and is avoidable in its entirety.

**I.    Jurisdiction and Venue**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334, and DRI LR Gen 109(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), and (O).

**II.    Relevant Procedural History**

Mr. Carpenter filed his voluntary petition under Chapter 7 of the Bankruptcy Code on January 28, 2016. Upon filing, he claimed the Property exempt under the Homestead Exemption for the full $500,000 amount available, and no formal objections were filed. On March 28, 2016, relying on Bankruptcy Code § 522(f)(1)(A), Mr. Carpenter filed the Motion now under consideration to avoid Citizens Bank's judgment lien against the Property in the approximate amount of $79,889. The Property is valued at $175,000 and is subject to no other encumbrances. On April 14, 2016, Citizens Bank filed its Objection, and Mr. Carpenter filed a memorandum of law responding to the Objection (Doc. #23). Citizens Bank then filed its response (Doc. #27).

**III.    Stipulated Facts**

The parties have stipulated to the following pertinent facts (Doc. #34, "Joint Pre-Trial"). Mr. Carpenter purchased the Property on May 1, 1986, with his then-wife. Since then he has

operated his auto repair business, Columbus Services, Inc., from the Property.[3] It is located within the City of Cranston's zoning district C-3, "intended primarily for the use of general business," and described as "mixed-use garage commercial." Mr. Carpenter began residing there after he separated from his wife between 2004 and 2005. They divorced in 2006, after which she transferred her interest in the Property to him. He applied to the City of Cranston Zoning Board of Review ("Zoning Board") to convert a 24 foot by 26 foot portion of the Property for residential use, which request was approved on June 11, 2008, on the condition that the Property is owner occupied ("Variance").

Mr. Carpenter made some improvements to the Property after the Variance was granted to enable him to live there and has continuously resided there as his sole residence since 2004 or 2005.[4] These alterations consist of space that he uses as "a bedroom, kitchen area, small dining area, a den, a cooking area, two bathrooms, (including a shower stall), and a basement" area once used as an auto lube pit. Joint Pre-Trial, ¶ 20. Mr. Carpenter continues to use the two-bay garage and an office to conduct the auto repair business of Columbus Services. In total, the mixed-use structure consists of 1,952 square feet. The 2015 Cranston Tax Assessment identifies the commercial portion as 1,276 square feet and the residential portion as 676 square feet.[5] These measurements do not include the basement area of approximately 396 square feet which is used for residential purposes.

---

[3] The parties refer the company as "Columbus Service, Inc.," but its corporate tax filings list the actual entity name as "Columbus Square Services, Inc." The Court will refer to it as "Columbus Services." *See* Exs. H-J.

[4] Photographs of the interior of the Property taken on April 25, 2016, reflect its use as of the petition date. *See* Ex. G. It is evident from these photographs that the term "improvements" is an overstatement; any alterations were modest at best simply to allow Mr. Carpenter to use the premises as his home.

[5] The 2015 assessment lists these measurements as "BAS" and "APT." At the hearing, the City of Cranston's Tax Assessor, Salvatore Saccoccio, testified that "BAS" is the shortcut designation for the first floor/commercial portion, and "APT" for the residential portion granted under the Variance. The Property is taxed as mixed-use, requiring Mr. Carpenter to pay the commercial property rate. The Tax Assessor's 2008-2014 assessments introduced into evidence do not account for the change to residential use for the area granted under the Variance.

**IV.  Applicable Law**

    A.    <u>Section 522(f) and the Burden of Proof</u>

Section 522(f)(1) authorizes a debtor to avoid a judicial lien "to the extent that such a lien impairs an exemption to which the debtor would have been entitled" under federal or state law. *See In re Derocha*, 503 B.R. 553, 554 (Bankr. D.R.I. 2014) (quoting *In re Kology*, 499 B.R. 20, 40 (Bankr. D. Mass. 2013)). Ordinarily, the debtor bears the burden of proof to establish that a lien is avoidable. *See In re McNeilly*, 249 B.R. 576, 579 (B.A.P. 1st Cir. 2000). However, when the grounds for an objection to lien avoidance rest upon a challenge to the debtor's claimed homestead exemption, Bankruptcy Rule 4003(c)[6] shifts that burden to the creditor; in essence converting it to a timely objection to the claimed exemption if filed within the 30-day deadline prescribed under Rule 4003(b). *See In re Betz*, 273 B.R. 313, 320 (Bankr. D. Mass. 2002) (citations omitted).

Here, Citizens Bank filed its Objection challenging Mr. Carpenter's Homestead Exemption 13 days before the deadline for objections to exemptions expired. Therefore, it bears the burden to prove by a preponderance of the evidence "that the exemption is not properly claimed," and if it produces "evidence to rebut the presumption of validity, then the burden of production shifts to [Mr. Carpenter] to come forward with unequivocal evidence to demonstrate that the exemption is properly claimed." *In re Stijakovich-Santilli*, 542 B.R. 245, 254-55 (B.A.P. 9th Cir. 2015) (citations omitted). A debtor's entitlement to an exemption is to be determined as of the petition date. *See In re Perry*, 357 B.R. 175, 178 (B.A.P. 1st Cir. 2006).

---

[6] Bankruptcy Rule 4003(c) provides, in part, "In *any hearing under this rule*, the objecting party has the burden of proving that the exemptions are not properly claimed." (emphasis added).

B.  The Rhode Island Homestead Exemption

Unlike in a number of other states, a debtor need not record a declaration of homestead to claim the Rhode Island Homestead Exemption; it applies automatically up to $500,000 "in the land and buildings . . . by an owner of a home or an individual who rightfully possesses the premises . . . and who occupies or intends to occupy the home as his or her principal residence." R.I. Gen. Laws § 9-26-4.1(a) (2016). The statute extends to "a sole owner, lessee . . . joint tenant, tenant by the entirety, or tenant in common . . . ." R.I. Gen. Laws § 9-26-4.1(b) (2016).[7] For its application to a particular real estate parcel, it "creates two conditions precedent . . . : (1) ownership or rightful possession; and (2) occupation of or intent to occupy the premises." *In re Tetreault*, 11 A.3d 635, 639-40 (R.I. 2011).

Similar to other homestead exemption statutes, "The Homestead exemption is a long-standing precept of property law formulated to protect the family and the home from the reach of creditors." *In re Ryan*, 282 B.R. 742, 749 (D.R.I. 2002) (citing 40 *Am. Jur. 2d* Homestead § 4 (1999)). "The underlying policy of homestead exemptions is to 'promote the stability and welfare of the state by securing to the householder a home, so that the homeowner and his or her heirs may live beyond the reach of financial misfortune . . . .'" *In re Tetreault*, 11 A.3d at 641 (quoting *Public Health Trust of Dade Cty v. Lopez*, 531 So. 2d 946, 948 (Fla. 1988)); *see also In re DeMasi*, 227 B.R. 586, 588 (D.R.I. 1998) ("[T]he obvious intent [of the Homestead Exemption is] to protect a debtor's family home."). It must be construed "liberally in favor of debtors." *In re Tetreault*, 11 A.3d at 641 (citations omitted); *see also In re Perry*, 357 B.R. at 180 ("Generally, federal courts must construe all exemption statutes liberally, in the debtor's favor

---

[7] As relevant here, the statute provides, "In addition to the property exempt from attachment as set forth in § 9-26-4, an estate of homestead to the extent of five hundred thousand dollars ($500,000) in the land and buildings may be acquired pursuant to this section by an owner of a home or an individual who rightfully possesses the premises by lease, as a life tenant, as a beneficiary of a revocable or irrevocable trust or otherwise, and who occupies or intends to occupy the home as his or her principal residence." R.I. Gen. Laws § 9-26-4.1(a) (2016).

'to reflect their remedial purposes.'") (citing *Caron v. Framington Nat'l Bank (In re Caron)*, 82 F.3d 7, 10 (1st Cir. 1996)).

**V.    Analysis**

    A.    Scope of the Homestead Exemption

Resolution of this contested matter hinges on whether Mr. Carpenter can invoke the Homestead Exemption for his Property in which he both resides and conducts a commercial enterprise. It is a question that has not been addressed by the Rhode Island Supreme Court (or for that matter the lower state courts). Citizens Bank contends that Mr. Carpenter is not entitled to do so because the statute does not contemplate a commercial structure as a "home," citing to case law from other jurisdictions for support. This argument is not supported by the statute and undermines the legislative intent and purposes of the Rhode Island exemption.

In the first instance, the Court must look to the language of the Homestead Exemption statute itself. "When a debtor has claimed a homestead exemption under state law, his entitlement to the exemption must be determined by examining the applicable state law, rather than relying upon decisions from other jurisdictions." *In re Shell*, 295 B.R. 129, 131 (Bankr. D. Alaska 2003) (citing *In re Brizida*, 276 B.R. 316, 322 (Bankr. D. Mass. 2002)). This Court, in the absence of a definitive Rhode Island Supreme Court ruling, must endeavor to determine how that court would answer the question. *See In re Caron*, 82 F.3d at 9; *see also In re Gourdin*, 431 B.R. 885, 892 n.12 (B.A.P. 1st Cir. 2010) (citations omitted).

Analyzing the statute necessarily starts with the rules of statutory construction under Rhode Island law. A guiding principle is "establishing and effectuating the intent of the Legislature. . . . accomplished [by examining] the language, nature, and object of the statute. . . . [and giving] to the words in a statute their plain and ordinary meaning, unless a contrary

interpretation is apparent." *Howard Union of Teachers v. State*, 478 A.2d 563, 565 (R.I. 1984) (citations omitted); *see also R.I. Chamber of Commerce v. Hackett*, 422 A.2d 300, 303 (R.I. 1980) ("If the language of a statute is plain and unambiguous and expresses a single, definite, and sensible meaning, that meaning is presumed to be the Legislature's intended meaning and the statute must be interpreted literally."). "[W]hen the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings" to give effect to each word. *State v. Santos*, 870 A.2d 1029, 1032 (R.I. 2005). "[I]t is axiomatic that 'this Court will not broaden statutory provisions by judicial interpretation unless such interpretation is necessary and appropriate in carrying out the clear intent or defining the terms of the statute.'" *Id.* (quoting *Simeone v. Charron*, 762 A.2d 442, 448-49 (R.I. 2000)). "This state-law rule of construction must be followed by federal courts construing state-law homestead exemptions." *In re Perry*, 357 B.R. at 180 (citing *Goldman v. Salisbury (In re Goldman)*, 70 F.3d 1028, 1029 (9th Cir. 1995)).

The Homestead Exemption applies to the "land and buildings . . . by an owner of a *home* . . . who occupies or intends to occupy the home as his or her principal *residence*." (emphasis added). The term "home" is not expressly defined in the statute. Bearing in mind the rules of statutory construction discussed above, the primary issue is whether the Property qualifies as a "home" under the statute. The term itself is quite commonplace and unambiguous. It should therefore be given its plain and ordinary meaning prescribed to it when the Homestead Exemption was enacted in 1998.[8] Webster's Dictionary defines "home" as "one's place of residence." *See Home*, Merriam-Webster's Collegiate Dictionary ("Webster's Dictionary") (10th

---

[8] *See* Property Exempt From Attachment—Homestead Exemption, 1998 Rhode Island Laws Ch. 98-270 (98–§ 2999). To ascertain the meaning of undefined terms in a Rhode Island statute, "reference to contemporaneous dictionaries is appropriate and often helpful." *Chambers v. Ormiston*, 935 A.2d 956, 961-62 (R.I. 2007) (citations omitted). A court may also refer to the "meaning of other words or phrases associated with it." *Labor Ready Ne., Inc. v. McConaghy*, 849 A.2d 340, 350 (R.I. 2004) (citations omitted).

ed. 1998). Black's Law Dictionary defines "home" as "[a] dwelling place." *Home*, Black's Law Dictionary (6th ed. 1994). It defines "dwelling," as "[t]he house or other structure in which a person or persons live; a residence; abode." *Dwelling*, Black's Law Dictionary (6th ed. 1994). Also, Black's Law Dictionary defines "residence" as the "[p]lace where one actually lives or has his home; a person's dwelling place or place of habitation; an abode . . . ." *Residence*, Black's Law Dictionary (6th ed. 1994). Webster's Dictionary similarly defines "residence." *See Residence*, Webster's Dictionary 993 (10th ed. 1998). These definitions remain the same in the current editions of these dictionaries.

Citizens Bank maintains that the Rhode Island legislature intentionally used "home" in the Homestead Exemption rather than a broader property term because the "practical meaning of 'homestead' or 'home' does not encompass a commercial structure." Citizens Bank's Trial Brief, at 6. It cites to the definition for "homestead" in the Rhode Island tax exemption statute that refers to a "multi-dwelling or multi-purpose building," arguing that this definitional omission from the Homestead Exemption supports its contention. *See* R.I. Gen. Laws § 44-33-3(4) (2016).

The Court does not find this particularly persuasive. Nothing in the ordinary definition of "home" as used in the Homestead Exemption leads to the conclusion that a multi-purpose building cannot serve as an individual's principal residence to which the exemption applies. Indeed, in his Trial Brief, Mr. Carpenter cites several cases holding that homestead exemptions do in fact encompass multi-purpose buildings. *See In re Rommer*, 549 B.R. 72, 82-83 (Bankr. D. Vt. 2016) (applying Vermont's homestead exemption to the entire parcel of land the debtor used as both a residence and for a farming business, noting that commercial use of the property did not automatically disqualify it from the homestead exemption); *In re Edwards*, 281 B.R. 439, 449 (Bankr. D. Mass. 2002) (citations omitted) ("if any portion of land or buildings is used to

Page **8** of **16**

generate income, that fact alone does not defeat the claim of homestead, as long as such property is also the debtor's primary residence, and such income is consistent with the policy of homestead exemption law to provide support for the family to prevent it from becoming public charge"); *In re Hamilton*, 461 B.R. 878, 887-88 (Bankr. D.N.M. 2011) (holding that a metal storage building where the debtor resided and conducted sales of fireworks two weeks of the year fell within the scope of New Mexico's homestead statute).

There is no language in the Homestead Exemption that limits its application to purely residential structures. All that it requires is that the individual must be an "owner" or "rightfully possesses the premises" . . . and "occupies or intends to occupy the home as his or her principal residence." This interpretation is just as consistent with the Rhode Island tax exemption statute that Citizens Bank highlights. Section 44-33-3(4) of the tax exemption provisions defines "homestead" to mean the dwelling structure, "whether owned or rented, and so much of the land surrounding it, not exceeding one acre, *as is reasonably necessary for use of the dwelling as a home, and may consist of a part of the multi-dwelling or multi-purpose building* and a part of the land upon which it is built . . . ." (emphasis added).[9] As earlier noted, a "home" is also defined as a "dwelling." *Home*, Black's Law Dictionary (6th ed. 1994); *see Dwelling*, Webster's Dictionary (10th ed. 1998) (defining "dwelling" as "a shelter (as a house) in which people live").

Significantly, the Court's conclusion that a mixed-use property falls within the scope of the Homestead Exemption fully embraces the legislative intent and purpose of the statute: to protect homes from creditors, promote stability and welfare for the homeowner, and secure the homeowner from living in "financial misfortune." *See In re Tetreault*, 11 A.3d at 641 (citations omitted). It also adheres to the Rhode Island and federal law mandates to construe the statute

---

[9] A court may consider other "'statutes relating to the same subject matter . . . so that they will harmonize with each other and be consistent' with their general objective scope." *South Cty Post & Beam, Inc. v. McMahon*, 116 A.3d 204, 215 (R.I. 2015) (citations omitted).

"liberally in favor of debtors." *Id.*; *In re Soto*, No. 13-02084 ESL, 2013 WL 3779382, at *3 (Bankr. D.P.R. July 18, 2013) (citing *In re Caron*, 82 F.3d at 10; *In re Perry*, 357 B.R. at 180). In short, the Court concludes that the reach of the Homestead Exemption is and was intended to apply to mixed-use commercial/residential properties so long as the other conditions of the statute are satisfied.

        B.      <u>Citizens Bank's Predominant-Use Argument</u>

Citizens Bank raises an alternative argument under the so-called predominant-use test adopted by some courts when applying homestead exemption statutes to mixed-use properties. In its Objection, it originally raised an additional apportionment argument pursuant to which it contended that only 34.6% of the Property is used residentially based on Cranston's zoning records, and that only this percentage of the exemption amount should apply to the Property. If this calculation applied, the lien of Citizens Bank would not be avoidable. But it appears to have abandoned this alternative position, relying instead in its Trial Brief, on the predominant-use test as one of the grounds for denial of any amount of the Homestead Exemption.

To buttress its argument, it relies on the Massachusetts bankruptcy court's decision in *In re Catton* that addressed whether the Massachusetts homestead exemption applied to the debtor's two-family residence where the debtor resided in one of the units and used the other unit as office space from which he conducted his insurance business. No. 14-41468-MSH, 2015 WL 1058363 (Bankr. D. Mass. Mar. 5, 2015). The *Catton* court described the predominant-use analysis as, "The point where a commercial use predominates over a residential use would become the tipping point for purposes of disqualifying a property from single family dwelling status under the homestead statute." *Id.* at *3.[10] Thus, even though a property may be mixed-use,

---

[10] As applied, two schools of thought under the predominant-use analysis have emerged "driven primarily by the language of the particular exemption statutes and in part by the practicalities of the situation." *In re Turner*, No. 04-

"courts generally allow the homestead exemption where residential use is primary and business use is incidental . . . ." *In re Hamilton*, 461 B.R. at 886. The original zoning of a property is not controlling once zoning approval to use a portion of a commercial property for residential purposes is obtained. *In re Robinson*, 75 B.R. 985, 988 (Bankr. W.D. Mo. 1987) ("There is no reason that a structure originally designed for some other purpose cannot become a debtor's homestead provided he occupy same as an owner."); *In re Turner*, 2005 WL 1397150, at *3 (rejecting "the notion that the zoning restriction necessarily invalidates the claim of homestead" under the Missouri homestead statute). The determination is a "fact intensive, case by case inquiry." *In re Catton*, 2015 WL 1058363, at *3.

Turning to its zoning, Citizens Bank asserts that the larger square footage of the Property is zoned commercial, and Mr. Carpenter's residential use should be limited to that area granted in the Variance. Therefore, it maintains, the Property is predominantly commercial property which, despite also being Mr. Carpenter's sole residence, does not qualify for the Homestead Exemption. It takes this argument to the extreme. Upon inquiry at the hearing, counsel for Citizens Bank stated that even if all commercial activity at a mixed-use property had ceased as of the petition date (the operative date), a debtor still would not be entitled to invoke the exemption. Neither the language of the Homestead Exemption nor case law supports this proposition. *See In re Kaska*, No. 07-12568, 2009 WL 2929252, at *3-4 (Bankr. N.D.N.Y. Jan. 14, 2009) (finding that the New York homestead exemption applied to property used solely as the debtor's residence where all commercial activity at the property had ceased pre-petition). Citizens Bank places far too great an emphasis on zoning and far too little on Mr. Carpenter's residential use of

---

40267DRD, 2005 WL 1397150, at *3 n.2 (Bankr. W.D. Mo. June 1, 2005). Under one approach, a number of courts have allowed the homestead exemption to apply to the entire mixed-use property, while the other approach permits a debtor to use only a portion of the exemption amount in proportion "to the space actually occupied as living quarters, carving out only that portion as exempt." *Id.*

the greater portion of the Property. Courts employing this analysis, including the *Catton* court, refer to zoning as only one of several factors to be considered, not the determinative factor. *See e.g.*, *In re Catton*, 2015 WL 1058363, at *3 (determining that actual use of the property was primarily residential in zoning district that also permitted incidental or secondary commercial use, as "[t]he test . . . is not whether the single family dwelling includes *any* commercial use but whether the commercial use predominates").

It is far from clear whether the provisions of the Homestead Exemption leave room for application of a predominant-use test. Mr. Carpenter asserts it does not, highlighting the only two conditions for a property to qualify for the exemption: ownership or lawful possession and occupation or intent to occupy the property as a principal residence. The Court need not dwell on the issue further because based on the testimony and evidence adduced at the hearing, the Court finds that the Property's use is predominantly residential and qualifies for the full exemption of $500,000.

    1.    *The Property's Commercial Versus Residential Use*

The Variance issued to Mr. Carpenter upon review of his application, to which an interior diagram of the Property depicting the proposed residential area was attached, authorized an area of 676 square feet for residential use. The balance of 1,276 square feet remained zoned for commercial use. By virtue of these designations alone, Citizens Bank argues that the Property's commercial square footage outweighs the residential, rendering it predominantly commercial property ineligible for any exemption. The Court disagrees. Mr. Carpenter testified that he physically measured the interior areas and he actually uses 1,280 square feet of the Property as his residence,[11] comprised of the 676 square feet under the Variance, as well as his personal

---

[11] This figure is consistent with the square footage provided on Mr. Carpenter's Exhibit C-2. Citizens Bank asserts that the residential use consists of 884 square feet, deducting the square footage for the basement. This differential is

workshop, a small bedroom, a storage room, and a basement area that all lie outside the area under the Variance.[12] As for the commercial use, his unrebutted testimony is that 720 square feet of the Property is actually used for the business operations.

Citizens Bank would have the Court ignore the realities of the actual usage here. Zoning does not equate to use. The fact remains that the areas Mr. Carpenter uses residentially, even if outside the Variance, are simply not being used for commercial purposes of any kind. Adopting Citizens Bank's viewpoint "would leave unprotected every home in which an owner operates a business, no matter how insubstantial." *In re Catton*, No. 2015 WL 1058363, at *3. The evidence presented leads the Court to find that Mr. Carpenter's actual use of the Property is predominantly residential, with its commercial use fairly limited and secondary to its residential purpose. The commercial operations of Columbus Services on the Property are modest and have been steadily declining over the last five years, with no signs of revitalization. Mr. Carpenter is now 79. He testified that in November, 2014, he suffered a heart attack which has significantly constrained his ability to conduct the automotive repair business. He is a one-man shop performing, as he stated, "small jobs," such as oil changes and replacement of headlights and windshield wipers. He does not and cannot perform "heavy work," such as repairs to motors or transmissions.

The limited and insubstantial nature of the business operations is underscored by its dwindling annual revenues. The federal tax returns of Columbus Services admitted into evidence for the years 2013 to 2015 list gross income of $6,637, $5,288 and $4,944, respectively. *See* Exs. H-J. Mr. Carpenter testified that Columbus Services does not pay any rent for the use of the Property, and he receives minimal and fluctuating income from the business. He relies heavily on

---

immaterial to the Court's finding in light of the multiple factors upon which it is based.

[12] Mr. Carpenter's photographs of the Property's interior show each of these areas with the exception of the small bedroom and the storage areas. *See* Ex. G. The basement area is not shown on any of the City of Cranston's zoning sketches of the interior of the Property, and Citizens Bank maintains that it is not approved for residential use.

his social security income of approximately $13,500 for his support. His personal federal income tax returns for the years 2013 to 2015 identify his occupation as "retired." See Exs. K-M. He also projected that the 2016 gross revenue of Columbus Services will be between $2,000 and $3,000 because the business is "sinking." He does not anticipate such revenues to increase in future years. Given the downward revenue spiral, his age, and his health issues, the Court finds Mr. Carpenter's projections reasonable.

2. *Expansion of Residential Use*

Citizens Bank's last salvo is that Mr. Carpenter's unauthorized expansion of his residential use of the Property beyond the Variance, which it asserts is a zoning violation, should preclude him from receiving the benefit of the Homestead Exemption. Without doubt, and the Court so finds, Mr. Carpenter's residential use of the Property goes beyond the square footage granted by the Variance. To put things in perspective, however, Mr. Rioles of the Cranston Zoning Board of Review/Planning Commission testified that three sides of the Property face residential properties. In fact, he explained, there are only four other commercial properties within the radius of the Property's zoning district compared to 55 surrounding residential units.

In the end, the encroachment of the residential use of the Property is an issue between Mr. Carpenter and the zoning officials of the City of Cranston. It is not a basis on which to deny Mr. Carpenter his Homestead Exemption. *See In re Pich*, 253 B.R. 562, 567 (Bankr. D. Idaho 2000) (holding that in light of the liberal interpretation of exemption statutes in favor of debtors, "the violation of zoning ordinances does not vitiate the [homestead] exemption claimed" where a debtor resided for many years in a property located in a zoning district that did not permit residential use);[13] *In re Turner*, 2005 WL 1397150, at *1, *3-4 (extending the homestead

---

[13] While ultimately the court in *Pich* denied the debtor's claimed exemption, it was on grounds of judicial estoppel based on the debtor having obtained a zone change from commercial to industrial. 253 B.R. at 568-69. Under the

Page **14** of **16**

exemption to property zoned commercial and agricultural where the debtor resided without zoning approval).

The Court finds that *In re Kellogg*, the primary case Citizens Bank relies upon, is inapposite. 197 F.3d 1116 (11th Cir. 1999). When applying the Florida homestead exemption, courts only permit a partial exemption to mixed-use property, excluding the exemption for that portion of the property used for non-residential purposes. *See, e.g.*, *In re Kain*, No. 12-31492-KKS, 2014 WL 10250731, at *3, *5 (Bankr. N.D. Fla. Feb. 14, 2014) (exempting 7.31% of the property that "functioned solely as the [d]ebtor's residence"). In doing so they are guided by legislative history whereby the statute was amended to remove "business house" from the description of eligible residences. *See In re Wilson*, 393 B.R. 778, 782 (Bankr. S.D. Fla. 2008) (emphasis added) ("The change . . . made it clear that the homestead exemption should not be applied to property used for business purposes.").

Additionally, the *Kellogg* court concluded that the debtor would not be entitled to exempt the entire property because it exceeded the acreage limits under the Florida homestead exemption. 197 F. 3d at 1122. A key factor in the Court's denial of the exemption was that the property could not be subdivided into a parcel consisting of the allowable acreage and a parcel containing the remaining acreage without zoning approval. *Id.* at 1120-21. Most troubling to the court was its concern that the debtor's maneuvering would prevent the case trustee from seeking zoning approval to subdivide the remaining acreage for the benefit of the estate. *See id.*

---

local zoning ordinances, the former designation permitted residential use while the latter precluded such use. *Id.* at 565. The court found that the debtor, who had not disclosed to the zoning officials his intention to live on the property, impliedly represented to them that the property would not be used for such purposes "as none were allowed within that zone." *Id.* at 568. Therefore, the debtor was judicially estopped from taking an inconsistent position in order to take advantage of the homestead exemption. The facts presented here are significantly different as Mr. Carpenter sought and obtained zoning approval to reside at the Property as his permanent residence.

But here, Mr. Carpenter's entire Property falls within the bounds of the Homestead Exemption. Unlike the Florida statute, the Rhode Island statute contains no acreage limitation to its application or legislative history regarding mixed-use property. The Court finds that Mr. Carpenter has satisfied the two requirements of the Homestead Exemption for its full applicability: he owns the Property and occupies it as his primary residence, which the Variance permits him to do. Citizens Bank has therefore failed to meet its burden of proving that Mr. Carpenter improperly claimed the Homestead Exemption.

    C.    <u>Lien Avoidance under Bankruptcy Code § 522(f)</u>

Having determined that the Property qualifies under the Homestead Exemption for the full amount of $500,000, the requisite calculation under § 522(f)(2)(A) has been satisfied and Mr. Carpenter has established that Citizens Bank's lien impairs his exemption and it is avoidable in its entirety.[14]

### VI. Conclusion

The Objection of Citizens Bank is **OVERRULED,** the Motion is **GRANTED,** and the lien of Citizens Bank is avoided in its entirety.

Date:  October 27, 2016                                        By the Court,

*/s/ Diane Finkle*
_____
Diane Finkle
U.S. Bankruptcy Judge

---

[14] Mr. Carpenter's Motion describes a second Citizens Bank lien on the Property in the same amount recorded on consecutive pages. At the hearing, Citizens Bank admitted to erroneously filing the same lien against Columbus Services and voluntarily released that lien on the record. While the Motion included this lien in the calculation, adjusting for this duplication, Citizens Bank's lien is avoidable because the sum of (1) the lien to be avoided ($79,889.86), (2) the total of all other liens against the Property ($0), and (3) the total amount of the Homestead Exemption that Mr. Carpenter is entitled to claim ($500,000), minus the value of his interest in the Property ($175,000), impairs his exemption by $404,888.86. *See In re Derocha*, 503 B.R. 553, 556-57 (Bankr. D.R.I. 2014).